UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 1:21-CR-31 |
| | : | |
| v. | : | (Judge Wilson) |
| | : | |
| MICHAEL SEALOVER | : | Electronically Filed |

UNITED STATES' SENTENCING MEMORANDUM

The United States files this Sentencing Memorandum as an aid to the Court in the sentencing of the defendant Michael Sealover, currently scheduled for November 17, 2023.

PROCEDURAL HISTORY

On February 17, 2021, a grand jury returned an 11-count indictment charging Stydinger with child-exploitation offenses, including: production and attempted production of child pornography, in violation of 18 U.S.C. § 2251(a) (counts 1, 2, 3, and 4); receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2) (counts 5, 6); coercion and attempted coercion of minors to engage in illicit sexual activity, including production of child pornography, in violation of 18 U.S.C. § 2422(b) (Counts 7, 8, 9, and 10); and possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B).  Doc. 1.

On November 29, 2022, Sealover pleaded guilty to using a minor to produce child pornography, as charged in count 1 of the indictment, pursuant to a plea agreement in which the Government agreed to dismiss the remaining counts after sentencing. Docs. 54, 57. As part of the plea agreement, Sealover stipulated and agreed that in addition to the offense charged in count 1, he committed each of the production and attempted-production offenses charged in counts 2, 3, and 4 of the indictment. Doc. 54 ¶ 12. Sealover also agreed that in lieu of pleading guilty to each of these counts, his guidelines would be calculated as if he had been convicted of each of them. *Id.*

**Sealover's Exploitation of Four Pre-Teenage Girls**

The PSR accurately summarizes Sealover's offense conduct. In short, in July 2020, Sealover communicated online with at least four pre-teenage girls, typically presenting himself as an adolescent male to gain the girls' trust. During online chats with these girls (one of whom was just 10 years old), Sealover coerced and enticed them into sending him sexually explicit images and videos of themselves in which they engaged in illicit sexual activity for his own sexual gratification. And when some of the girls expressed reservation, fear, or even abject and

suicidal despair about what Sealover was commanding them to do, Sealover engaged in a cruel pattern of extortion by threatening to publicize the girls' images on the internet or otherwise threatened them or their families if they did not comply with his demands.  PSR ¶¶ 4-17.

### The PSR's Guideline Calculation

The final presentence report ("PSR") with an addendum was filed on April 4, 2023.  Docs. 64, 65.  As part Sealover's plea agreement, he admitted to committing each of the production charges in counts 1, 2, 3, and 4 of the indictment, and agreed that his guidelines would be calculated as if he had pleaded guilty to each of the offenses.  PSR 21; Doc. 54 ¶ 12.  In accordance with that agreement, the PSR calculated Sealover's total offense level (after a three-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1) to be 43.  PSR ¶¶ 22-58.  Sealover had no criminal history prior to this case, and therefore his criminal history category was calculated to be I.   PSR ¶ 61.  Based on an offense level of 43 and a criminal history category of I, the PSR calculated Sealover's advisory guideline range to be 360

months' imprisonment—the statutory maximum under 18 U.S.C. § 2251(e).[1]  PSR ¶¶ 83, 84.

## Sealover's Sentencing Memorandum

Sealover filed a sentencing memorandum on October 19, 2023. Doc. 77.  In it he does not object to any of the calculations in the PSR but argues in favor of a downward variance.  *Id.* at 5, 7.  Although he does not recommend a specific sentence, Sealover agrees that a "robust sentence must and should be imposed," and suggests that sentence could fall between the mandatory minimum sentence of 15 years and 20 years.  *Id.* at 5, 7.  Sealover concedes that "the nature of the offenses at issue is undoubtedly horrendous," that his actions were "inexcusable," and that his "multiple victims are likely to have lasting repercussions from the impact of his actions."  *Id.* at 4.  Nevertheless, in urging the Court to vary downward from the statutory maximum, he emphasizes that his offenses did not involve physical contact with any of the

---

[1] An offense level of 43 and a criminal history category of I yields an advisory guideline range of life imprisonment. PSR ¶ 84; USSG, Sentencing Table.  However, because the statutory maximum term of imprisonment for the offense of conviction is 30 years, the advisory guideline range is reduced to the statutory maximum.  USSG § 5G1.1(a).

4

victims, and that prior to committing the offenses in this case he had never been convicted of a crime. *Id.* He also notes that he was a victim of sexual assault when he was teenager, which he offers may be "meaningful in understanding why his sexual proclivities may not [be] aligned with what is lawful and appropriate." *Id.* at 5.

Appended to Sealover's sentencing memorandum is a psychological evaluation authored by Dr. Frank Dattilio, which summarizes Sealover's childhood, adolescence, and adult life; theorizes about Sealover's possible mental-health diagnoses; offers a risk assessment; and recommends therapies that may benefit Sealover during and after his imprisonment. Doc. 77, at 9-30.

## THE GOVERNMENT'S SENTENCING RECOMMENDATION

District courts engage in a familiar three-step process when sentencing criminal defendants:

> A district court must begin the process by first calculating the applicable sentencing guidelines range. After that initial calculation, the court must then rule on any motions for departure, if a motion is granted state how the departure affects the guidelines calculation. Finally, after allowing the parties an opportunity for argument, the court must consider all of the § 3553(a) factors and determine the appropriate sentence to impose, which may vary from the sentencing range called for by the guidelines.

5

*United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009).

The PSR accurately calculated Sealover's applicable guideline range at 360 months' imprisonment based on a total offense level of 43 and a criminal history category of I. PSR ¶ 84.

At step two, Sealover has not requested a downward departure and the Government does not believe there is any basis for a departure.

At step three, the Court is enjoined to consider the 18 U.S.C. § 3553(a) factors and any variances from the guidelines range that may be appropriate.

The offenses for which Sealover is to be sentenced are unquestionably grave and warrant a substantial sentence to reflect the seriousness of the offenses, promote respect for the law, provide for just punishment, deter others from engaging in similar conduct, and protect the public—in particular, vulnerable children—from Sealover's crimes. The sentence should also factor in Sealover's manifest need for psychological treatment and sex-offender therapy, which Dr. Dattilio agrees he needs.[2]  18 U.S.C. § 3553(a)(2); Doc. 77, at 28.

---

[2] Dr. Dattilio acknowledges that Sealover "clearly [engaged in] predatory behavior" that targeted minor victims, and that his predation

Generally, the Court should sentence Sealover within the applicable guideline range, "…unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b)(1).

Upon consideration of Sealover's offense conduct and Dr. Dattilio's evaluation and qualified opinions, there is relatively little to commend a sentence below the guidelines. By his own telling, Sealover was raised in a loving home with supportive parents. Although he claims to have been a shy child who experienced bullying, as an adult he maintained gainful employment, was twice married, fathered children, and engaged

---

involved extorting his victims to coerce them into producing and sending him images of child pornography. Doc. 27, at 27. Dr. Dattilio also concedes that although Sealover did not have physical contact with his victims, his behavior involved extortion and threats. *Id.* at 27-28. Thus, Dr. Dattilio opines that "given [Sealover's] history of extortion, he is still at *a moderate to high risk* for that abuse in the future without treatment." *Id.* at 28 (emphasis added). Thus, contrary to Sealover's suggestion that "[t]here is no indication in history, mental health eval, or other measure that would suggest Defendant would re-offend upon his release," Dr. Dattilio plainly believes otherwise. Sealover's serial and predatory conduct aimed at pre-teenage children compels a finding that meaningful sex-offender treatment and other interventions should be part of Sealover's imprisonment and supervised release.

7

in a series of intimate relationships with other adult women.[3]  This general life history does not suggest a basis to vary downward.

Sealover has not formally been diagnosed with any significant mental-health impairment, is not prescribed psychological medication, and his psychological profile is, in Dr. Dattilio's words, "devoid of any severe mental illness." Doc. 77, at 25. Although Dr. Dattilio opines that Sealover meets the criteria for a range of mental-health diagnoses, he concedes that "there is no indication . . . [Sealover] meets the diagnostic criteria for any of the more severe personality disorders . . . ." *Id.* at 26. In general, Dr. Dattilio observes that Sealover is depressed by circumstances caused by his own criminal conduct, is anxious about the punishment he faces as a result and appears to be self-pitying about the state of his own life.  This unremarkable psychological profile does not help to explain Sealover's offenses and is not otherwise mitigating.

---

[3] Sealover's two marriages ended in divorce, and the circumstances of those divorces appear to have been relatively unremarkable.  Doc. 77, at 15-17.  It is curious that after the dissolution of his second marriage, Sealover gravitated towards increasingly younger sexual partners, first with a 22-year-old babysitter and then with two 18-year-old women at a time when he was nearly 40 years old.  *Id.* at 17-18.  Dr. Dattilio's summary of Sealover's relationship history does not suggest a connection to the pattern of deviance, threats, and extortion that he engaged in when committing the offenses in this case at age 42.

According to Dr. Dattilio, Sealover claims to have no memory of some of his offense conduct. Doc. 77, at 18; *see also* PSR Addendum. It is not clear what relevance, if any, this may have had to Dr. Dattilio's evaluation. The Government submits that Sealover's claimed amnesia is not credible when considered against his self-reported life history and the fact that there is no neuropsychological basis for such memory lapse. Doc. 77, at 23.[4] During his interview with Dr. Dattilio, Sealover shared memories going back to when he was three years old, and he recounted specific details from his childhood, adolescence, and adulthood that spanned nearly 40 years. Doc. 77, at 10-18. Sealover's claim to have forgotten some part of his offenses should be viewed skeptically and should not influence the Court's sentencing determination.

---

[4] Dr. Dattilio puts it this way: "[Sealover's] memory for remote, recent and past events was intact, but he contends that he is blacked out for some of the activity in the instant offense. This does not appear to be organically based or rooted in any neuropsychological disability but more so a result of an emotional blackout due to his struggle with his activities in the instant offense." Doc. 77, at 23. To be clear, even if Sealover has some selective memory loss, he does not dispute that he committed the offense to which he pleaded guilty in count 1 of the indictment. His alleged memory lapse is confined to some details of the offense charged in count 2 of the indictment. Doc. 65 (PSR Addendum).

Although there is little in Dr. Dattilio's report to support a deviation from a guideline sentence, one aspect does warrant consideration. Dr. Dattilio explains that when Sealover was 15, he was sexually molested by a family acquaintance, and Dr. Dattilio opines that this incident had a "profoundly negative" impact on him during his adolescence. Doc. 77, at 14. According to Dr. Dattilio, Sealover's parents confirmed to him that the abuse occurred, and he suggests Sealover received inadequate counseling following the incident, which contributed to self-destructive behavior, including cutting and aborted suicide attempts. *Id.* Although it appears Sealover largely worked through this trauma as he progressed into adulthood, Dr. Dattilio opines that the abuse had a negative effect on Sealover's overall mental health that may have contributed to his child-exploitation offenses. *Id.* at 25, 28. In one of his recommendations, Dr. Dattilio suggests that Sealover would benefit from ongoing therapy to address this and other mental-health challenges such as depression. *Id.* at 29. The Government agrees that such therapy would be an important part of Sealover's sentence and agrees the Court should take into account Sealover's own abuse when determining an appropriate punishment.

Although Sealover's serial offenses against young girls compel a substantial sentence, the Government recommends a modest variance to account for Sealover's own sexual abuse and untreated trauma, and to acknowledge that Sealover is a first-time offender whose offenses did not involve hands-on contact with children.  To account for these moderately mitigating considerations, the Government recommends that the Court sentence Sealover to 300 months' imprisonment followed by 15 years of supervised release, to include sex-offender and mental-health treatment.

                                                Respectfully submitted,

                                                GERARD M. KARAM
                                                United States Attorney

Dated:  November 10, 2023           /s/ Christian T. Haugsby
                                                Christian T. Haugsby
                                                Assistant U.S. Attorney
                                                PA 205383
                                                1501 N. 6th Street, Box 202
                                                Harrisburg, PA 17102
                                                Phone: (717) 221-4482
                                                Fax: (717) 221-4493
                                                christian.haugsby@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2023, I served the Government's Sentencing Memorandum on counsel for the defendant through CM/ECF and email to:

David R. Erhard, Esq.
de@stevericelaw.com

/s/ Christian T. Haugsby
Christian T. Haugsby
Assistant U.S. Attorney